## HUNT & HUNT vs. BARFIELD.

1. A subsequent parol agreement which is founded on no new consideration, and has been productive of no injury to the party who was to perform it, is not a waiver or discharge of a prior written contract, unless such subsequent agreement has been executed.

ERROR to the Circuit Court of Marengo. Tried before the Hon. Jno. D. Phelan.

BROOKS for plaintiffs in error :

1. The charge of the court assumes that the giving of the note by Hunt and his promise, made some eighteen months afterwards, to carry the gin to Greensboro' to be repaired, was a waiver of all his rights under the written contract, and bound him to pay the entire note and interest, which is clearly erroneous.

The giving of the note could not be considered a waiver of any right under the contract, for he gave it upon the express agreement, that he might still rely upon the contract ; and the agent persuaded Hunt to do so, clearly intimating that Mather, the payee, would soon comply with his part of the contract. To enforce the collection of the note, or to insist that Mather was thereby discharged from his obligations, would be a gross fraud upon Hunt.

But Mather was not thereby discharged from his obligations; it remained his duty to repair the gin, or supply its place with a good one in a reasonable time. Yet eighteen months elapsed, and he did neither. Hunt then had a right of action against him for the breach of contract, or a right to defend any action brought upon the note.

2. What did Hunt do to forfeit his right of action or defence? The charge implies that his promise eighteen months after the breach of the contract to take the gin to Greensboro' to be repaired at the expense of Mather, and his failure to do so, worked this forfeiture, and bound him to pay the whole note and interest. A right of action once vested cannot be waived or discharged by any act of the injured party, short of a release or acceptance of something in satisfaction.—Leavitts v. Smith, 7 Ala. 182, and cases there cited. Hunt was not bound by the

contract to have the gin repaired, or to take it to Greensboro', and therefore his promise was merely gratuitous.

The plaintiff was not entitled to recover at all, until he had complied with his part of the contract. But at most, Hunt was not bound to pay the whole amount for the defective gin. Under no circumstances, should he be required to pay more than its value.

JOHN, *contra:*

1. The charge of the court is correct. If the gin was not such as was warranted, he was bound both by law, and the express terms of the warranty, to give immediate notice, or return the gin; and if he did not, but continued to use the gin, and gave his note, he waived the warranty.—Fisher v. Sumda et al. 1 Camb. 190-193 ; Adams v. Richards, 2 H. Black. 573 ; Rowe v. Osborne, 1 Star. 140.

2. Hunt's agreement to take the gin to Greensboro' altered the obligations of the parties, and is binding upon him. (If this agreement is not binding for want of consideration, then the agreement to extend the warranty is also void for the same reason; both occupy the same ground.)—Warren v. Mains, 7 John. 476-477 ; Betts v. Perine, 14 Wend. 219 ; Brindly v. Tibbets, 7 Greenl. 70 ; Adams v. Davis, 16 Ala. 748 ; Story on Contracts, 24, § 33 ; Philips on Ev. 3 Cow. & Hill's notes, 1479-1481.

3. " Either party may waive any right introduced into or provided by the contract, either expressly or tacitly, by acts or declarations fairly indicating a relinquishment of any provision or part of a provision, and without the performance of which, unless relinquished or waived, a recovery could not be had."— Shaw v. Turnpike Co. 2 Penn. 454. This case fully covers the entire charge, and the refusal to charge as requested.

4. There is no analogy between this case, and the case of Leavitts v. Smith, et al. 7 Ala. 175, and is not embraced by that class of cases. The release of the right of action is entirely different from a waiver of damages, or the alteration of the terms of a contract.

DARGAN, C. J.—The objection to the recovery in this case is, that the consideration of the note sued upon had partially

Hunt & Hunt v. Barfield.

or totally failed; we must therefore look to the evidence show-ing the consideration, and ascertain whether there has been a failure in whole or in part. In 1846, T. Mather, the payee of the note, and Hunt entered into a written agreement, where-by it was agreed that Hunt should buy of Mather a cotton gin, of a description specified in the contract. But if the gin did not perform well, when started, Hunt was to give as early in-formation as he could to Mather, who was to cause it to perform well, or supply him with another that would. It was further agreed, that as soon as the gin was started and performed well, Hunt was to give his note to Mather for one hundred and fifty dollars, payable on the first day of January, 1848. The evi-dence further shows that in pursuance of this agreement, Math-er delivered to Hunt a gin in the month of October, 1846, and in November thereafter, the agent of Mather called on Hunt for the note. Hunt told the agent that he was not satisfied with the gin, that it made a fine sample, but ginned too slowly, and ob-jected to giving his note. The agent examined the gin, and saw that it did not perform well, but ginned too slowly, but he could not alter it at the plantation of Hunt, and thought it would have to be sent to Mather's shop, which was about eighty miles dis-tant. The agent, not wishing to return again for the note, in-duced Hunt to execute it, telling him that he would see Mather, and let him know the condition of the gin. The agent saw Mather in two or three months afterwards, and informed him of its con-dition, but it does not appear that any thing more was said or done in reference to the gin, until the spring of 1848, when an-other agent of Mather called on Hunt, who told him that the gin did not perform well, and some part of it was broken, and therefore he could not use it. He further stated, that Mather ought to have the gin put in good order. The agent saw Mather afterwards, and told him what Hunt had said. Mather then requested his agent to say to Hunt, that if he would send the gin to the shop of Mr. Dubois at Greensboro', which was about forty miles distant from the residence of the defendant, that he would have the gin put in good order. The agent told this to Hunt, who agreed to do it, but never has carried the gin to the shop of Mr. Dubois, and it has never been repaired.

It is contended by the counsel for the plaintiff, that the fail-ure of Hunt to carry the gin to Dubois' shop discharged Mather

from his obligation to repair it, so as to make it perform well; but we cannot yield our assent to this proposition. True it is, that a parol agreement which has been executed will discharge an antecedent contract when so intended by the parties, whether such prior contract rests in parol, or is under seal.—Wallis v. Long, 16 Ala. 738; Barville & Martin v. Conner, 6 Ala. 617, and cases there cited. But the general rule is, that a subsequent parol agreement will not discharge a prior written contract, unless such agreement has been executed.—Adams v. Nicholas, 19 Pick. 275.

I will not say, however, that a parol executory agreement can in no case be considered as a waiver or a discharge of a written contract; but if such executory agreement be founded on no new consideration, and has been productive of no injury to the party who was to perform it, I cannot see how it is to discharge him from the performance of an absolute and perfect obligation. Mather, the payee of the note, was absolutely and unconditionally bound to repair the gin, before Hunt agreed to carry it to the shop of Dubois ; and Hunt's failure to do so, (his promise being founded on no new consideration) cannot release Mather from the performance of his part of the original contract. Mather therefore has not fully complied with the agreement which formed the consideration of the note, and consequently, there has been a partial failure of consideration, and the plaintiff can only recover the amount of the note with interest thereon, less the sum that it would have cost to put up the gin in good repair at the time it was first started. This being, in our opinion, the rule that must govern the amount of the recovery, it follows that the court erred in the instructions given to the jury, and the judgment must be reversed, and the cause remanded.